UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EVELYN HOWELL MASSEY, | Case No. 2:19-cv-09626-CJC-JDE |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| BIOLA UNIVERSITY, INC., et al., | |
| Defendants. | |

This Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

On November 8, 2019, Plaintiff Evelyn Howell Massey ("Plaintiff"), proceeding pro se and in forma pauperis, filed a Complaint against Defendant Biola University, Inc. ("Defendant") and Does 1-10 arising from her allegedly wrongful administrative withdrawal from the university. Dkt. 1. After Defendant filed a motion to dismiss and motion to strike (Dkt. 14, 15), on

January 16, 2020, Plaintiff filed the operative First Amended Complaint. Dkt. 29 ("FAC"). The FAC asserts the following claims: (1) violation Title IX of the Education Amendments of 1972; (2) Title VI of the Civil Rights Act of 1964; (3) violations of the First, Fourth, Ninth, and Fourteenth Amendments; (4) breach of contract and negligence; and (5) "Wrongful Administrative Withdrawal." In light of the FAC, the Court denied the motion to dismiss and motion to strike as moot. Dkt. 30.

On February 6, 2020, Defendant filed a Motion to Dismiss the FAC under Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff failed to state facts sufficient to state a claim for relief. Dkt. 32 ("Motion to Dismiss" or "MTD"). On the same date, Defendant also filed a Motion to Strike under Fed. R. Civ. Proc. 12(f) on the ground that Plaintiff pled matter that is "redundant, immaterial, impertinent, or scandalous." Dkt. 33 ("Motion to Strike"). On March 25, 2020, Plaintiff filed an Opposition to the Motion to Dismiss ("Opp.") (Dkt. 39) and an Opposition to the Motion to Strike (Dkt. 41). Defendant filed Reply briefs on March 31, 2020. Dkt. 43, 44 ("MTD Reply").[1]

For the following reasons, the Court recommends that the Motion to Dismiss be granted and the Motion to Strike be denied.

## II.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff alleges between 2014 and 2018, she was a student at Defendant university and had "issues" with several professors, which ultimately resulted in Defendant issuing an Administrative Withdrawal against her.

---

[1] Defendant requests that a portion of Plaintiff's Opposition to the Motion to Dismiss be stricken because she exceeded the page limit. See MTD Reply at 1 n.1 (citing Local Rule 11-6). While the Court declines to strike the additional arguments, which largely reiterate the contentions in the FAC and arguments in the rest of the Opposition, the parties are reminded to comply with the Local Rules. Future non-compliant filings may be stricken without further warning.

A.    <u>Allegations Regarding Prof. David Rimoldi</u>

Plaintiff alleges in the Fall Semester of 2015, she began having problems with Prof. David Rimoldi ("Rimoldi"), the facilitator for her spiritual formation course. FAC ¶ 9. As part of Defendant's requirements, Rimoldi "made demands" for Plaintiff to share her personal reactions, feelings, and thoughts after prayer assignments. Plaintiff did not agree with the requirement, and claims she told Rimoldi that her prayers to God were personal and private and the "Prayer Projects" should be voluntary due to the personal nature of the questions. <u>Id.</u> She avers that she received "lower points" on her assignments because she refused to comply with this requirement. <u>Id.</u> Plaintiff alleges that she ultimately received a B- in this course, but received approval to retake it after reporting her concerns to the Spiritual Formation Chairperson. <u>Id.</u> ¶ 11.

B.    <u>Allegations Regarding Prof. Kevin Van Lant</u>

Plaintiff alleges during the Spring 2016 Semester, she enrolled in Prof. Kevin Van Lant's ("Van Lant") pastoral care and counseling course. Plaintiff avers Van Lant did not return several of her assignments with evaluation, and she discovered her overall grade was C- mid-way through the semester. She allegedly emailed Van Lant and scheduled conferences to discuss her concerns. During these conferences, Plaintiff maintains she "learned" Van Lant had "a personal romantic/sexual interest" in her. FAC    ¶ 12.

After she received a B- in this course, which "was a shock" to her as she has a Master of Science Degree in Counseling from La Verne University with a 3.95 GPA, she received approval to retake Van Lant's course to improve her GPA. FAC ¶¶ 13-14. Plaintiff "believes" her grades in the courses of Van Lant and Rimoldi are connected as they are "collaborating colleagues." <u>Id.</u> ¶ 14. In total, Plaintiff received approval to retake four courses in July 2016. <u>Id.</u> ¶ 15.

Plaintiff assert she did not re-enroll in Van Lant's course in the Fall of 2016 but instead tried to do an independent study, but other professors were

not available. FAC ¶ 15. She claims in September 2016, she gave Van Lant a "very personal confidential (response to his advances) notification," explaining she would not get involved with him because he was married and confirmed her Christian values and respect for the marriage union he had with his wife. Id. ¶ 16. On October 10, 2016, she emailed Van Lant, informing him that she was not enrolling in his Fall 2016 course. According to Plaintiff, she believed "the personal interest and advances from Van Lant were resolved." Id.

Plaintiff alleges on or about October 14, 2016, she learned Van Lant gave the "personal response letter" and email to his department chairperson. She was "extremely angry" with Van Lant for sharing the letter as one of her goals was to become a professor at the university. On October 14, 2016, she emailed Van Lant asking if he shared the letter, but did not receive a response. She emailed him again the following day, calling him a "Dumb Ass" if he shared the letter and telling him to never "come near [her] again." Id. ¶¶ 17-20.

Plaintiff alleges she did not have any further communications with Van Lant from October 15, 2016 to February 2017. FAC ¶ 20. She claims in the Fall of 2016, Van Lant filed a "Non-Discrimination and Sexual Misconduct/ Harassment" complaint against her with Campus Safety, and he was interviewed on November 21, 2016. On January 30, 2017 a "No Contact" order was issued by Campus Safety "with the support of [Defendant's] Administration." Plaintiff claims that Van Lant should have reported his concerns directly to the Dean, not Campus Safety. Id. ¶¶ 20, 23, 24, 38. Plaintiff apparently did not receive notice of Van Lant's complaint or No Contact order until after February 2, 2017. Id. ¶¶ 20, 28, 55.

In the Spring of 2017, Plaintiff alleges she enrolled in Van Lant's course because he was the only professor offering the counseling course and she had been unable to secure an independent study. On or about the first day of the course, Plaintiff claims she received an email from Campus Safety requesting a

4

meeting. No explanation was provided. At this meeting, Plaintiff was allegedly informed that she was being taken out of Van Lant's course, apparently based on Van Lant's complaint. At the end of the meeting, she purportedly provided the October 14 and 15, 2016 "emails" to the Chief of Campus Safety, who Plaintiff claims did not attend the meeting. FAC ¶¶ 20-21.

Plaintiff alleges that she again tried to enroll in Van Lant's course in the Fall of 2018. According to Plaintiff, she contacted Associate Provost Pat Pike ("Pike") on April 3, 2018 about retaking Van Lant's course, including Van Lant on the email. FAC ¶ 30. Pike purportedly told Plaintiff in a responsive email the same day that "she was going to handle the retake course problem and she would get back to Plaintiff with an answer." Id. Plaintiff alleges she did not hear anything further from Pike regarding this issue. Id. ¶ 31.

C.    Allegations Regarding Prof. Ben Shin

Plaintiff claims during the Fall 2017 Semester, she also had issues with Prof. Ben Shin ("Shin"), who taught a new testament survey course. She avers Shin and Van Lant are "collaborating colleagues," purportedly through their mutual friendship with Retired Prof. Walter Russell ("Russell"). FAC ¶ 26. During Shin's lectures, he allegedly referred to Plaintiff as an "overachiever," which she felt was demeaning and insulting and a form of "negative racial discrimination." FAC ¶¶ 26-27. Plaintiff claims that his "put downs" were meant to embarrass her and she objected to his use of this word. Id.

Plaintiff also claims she had concerns about Shin's lectures and lack of clarity with his quizzes, a concern allegedly shared by other students. FAC ¶ 26. When she purportedly tried to schedule conferences with Shin to discuss her concerns, he either stated he did not have time or ignored her requests. When they finally spoke, Plaintiff asserts Shin was "extremely rude" so she hung up on him and later emailed him about his behavior. On November 2, 2017, Shin allegedly filed a complaint against Plaintiff with Campus Safety. Id.

¶ 26-27. Plaintiff claims this report was filed prematurely as Shin never scheduled a conference with her to address his concerns and Plaintiff was never notified in advance that the report was being filed. Id. ¶ 27. On November 10, 2017, Plaintiff allegedly had a meeting with Pike, Assistant Dean of Talbot School of Theology Aaron Devine ("Devine"), and a note taker to discuss Shin's complaint. Another meeting was allegedly held on December 7, 2017 between Plaintiff, Shin, and Pike to resolve their differences. As a result of this meeting, Plaintiff claims her relationship with Shin was restored and they reconciled. Id. ¶ 27.

D.   Allegations Regarding Prof. Walter Russell

Plaintiff claims that Russell as well as other staff members followed and "track[ed]" her on school campus for Van Lant. FAC ¶ 26. She also "believes" Defendant put a tracking device on her car for the purpose of "racial ethnic profiling." Id. ¶ 38. She allegedly reported this behavior to Campus Safety, and the La Mirada and Norwalk Sheriff's Departments. Id. ¶ 26.

E.   Allegations Regarding Prof. Clay Jones

Plaintiff also claims that Prof. Clay Jones ("Jones") and Van Lant are "collaborating colleagues." She avers Jones wrongfully gave her a failing grade during the Spring 2017 Semester, resulting in lost credit and financial aid. She alleges Jones sabotaged her in his course by denying her the benefits of faculty conference advising time, not providing her the opportunity to drop the course if she was failing, and not giving her timely feedback on her only assignment. FAC ¶¶ 32, 59. Plaintiff "believes" Jones is "a racist/bigot" as he presented PowerPoints on the KKK, which she found to be extremely offensive. Id. ¶ 32.

F.   Administrative Withdrawal Process and Decision

On July 24, 2018, Plaintiff allegedly received an email from Dean Clint Arnold ("Arnold"), accusing her of violating an oral No Contact order from the Chief of Campus Safety in Fall 2016. FAC ¶ 31. Plaintiff claims she did not

6

have any communications with the Chief during the Fall 2016 Semester and responded to Arnold's email, including Van Lant on the email. Id.

On August 22, 2018, Arnold allegedly initiated disciplinary proceedings against Plaintiff, without providing her an opportunity to respond to the allegations. FAC ¶¶ 28-29. It appears the disciplinary proceedings were based on the issues with the various professors and allegedly false allegations made by Dean Gregg Geary regarding misconduct in the library. Id. ¶¶ 28, 33.

Plaintiff claims Senior Associate Provost Clark Campbell ("Campbell"), the "independent Adjudicator" for the disciplinary proceedings, was not independent and was a "collaborating colleague" with Van Lant, Pike, Arnold, Devine, Jones, Shin, and Rimoldi. FAC ¶ 34. As best the Court can discern, Plaintiff claims she did not receive a letter from Campbell regarding the disciplinary proceedings, as Campbell claimed "Plaintiff was not accessible to receive his letter (8/2018)," although she claims this is false, as she received other communications from Arnold and Campbell. Id. As a result of the disciplinary proceedings, Plaintiff avers she fell behind in her coursework, which she believes was part of Campbell's intent. Id. ¶ 38. According to Plaintiff, Defendant executed an Administrative Withdrawal against her on November 8, 2018. Id. ¶¶ 23, 27, 38. Plaintiff also alleges Defendant filed a "Title IX Complaint" against her, although it is unclear whether this was a separate complaint or part of Van Lant's 2016 complaint. See id. ¶ 38.

Plaintiff claims that due to Defendant's and its professors' actions, she lost "tens of thousands of dollars in Federal financial student aid," countless hours of preparation in assignments, resources, books, family sacrifices, and overall educational and academic progress she did not complete, and overall harm to her reputation. The Administrative Withdrawal also delayed her plan to graduate in December 2020 and resulted in the loss and delay of future scheduled career advancement and increased earnings. FAC ¶ 40.

Plaintiff requests Defendant rescind the Administrative Withdrawal; reinstate her in good standing; reactivate her student email account; provide administrative assistance and counseling for reenrollment and coordinate courses to finish her graduation requirements; pay her tuition for the remainder of her program; pay for her books, schools supplies, typist cost, transportation, housing, meals, and student conferences; exempt her from required spiritual formation courses; remove certain grades from her transcript; destroy copies of the disciplinary proceedings and Title IX claim against her; pay for an educational trip to Israel; and pay $200,000 in damages. FAC at 52-53.

## III.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a statement of claim for relief. A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (as amended). In determining whether a complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) dismissal, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); see Fed. R. Civ. P. 8(a). While detailed factual allegations are not required, a complaint with "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and "'naked assertion[s]'

8

devoid of 'further factual enhancement'" would not suffice. <u>Iqbal</u>, 556 U.S. at 678 (citation omitted). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citation omitted).

Pro se complaints are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam); <u>see also</u> <u>Jackson v. Carey</u>, 353 F.3d 750, 757 (9th Cir. 2003) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." (citation omitted)). Even so, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." <u>See</u> <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." <u>Platte Anchor Bolt, Inc. v. IHI, Inc.</u>, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." <u>Id.</u>

/ / /

/ / /

# IV.

## DISCUSSION

A.   <u>Motion to Dismiss</u>

    1.   <u>Exhaustion of Judicial Remedies</u>

Defendant argues that Plaintiff has failed to plead the correct claim and seek the correct relief. MTD at 15-16. Defendant asserts courts generally may not interfere in the internal processes of universities unless the plaintiff alleges arbitrary and capricious actions, in which case such challenges must be brought through a writ of mandate. <u>Id.</u> at 16-17. Because Plaintiff failed to petition for a writ of mandate, Defendant asserts the FAC fails to plead facts sufficient to state a claim for relief. <u>Id.</u> at 17.

To exhaust Plaintiff's judicial remedies for her claims challenging the Administrative Withdrawal decision, Plaintiff must seek a writ of administrative mandamus under Cal. Civ. Proc. Code § 1094.5. <u>See</u> <u>Doe v. Regents of the Univ. of Cal.</u>, 891 F.3d 1147, 1154-55 (9th Cir. 2018); <u>Doe v. Cal. Inst. of Tech.</u>, 2019 WL 4238888, at *1 (C.D. Cal. Apr. 30, 2019); <u>Gupta v. Stanford Univ.</u>, 124 Cal. App. 4th 407, 409 (2004) (complaint challenging university disciplinary proceedings was properly dismissed for failing to exhaust judicial remedies); <u>Goldberg v. Regents of the Univ. of Cal.</u>, 248 Cal. App. 2d 867, 873-74 (1967) (finding that a petition for a writ of mandate was the appropriate remedy for student disciplinary decisions). Section 1094.5 applies to private universities (<u>Pomona Coll. v. Superior Court</u>, 45 Cal. App. 4th 1716, 1721-24 (1996)), and provides the exclusive process for judicial review of "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." Cal. Civ. Proc. Code § 1094.5(a); <u>see also</u> <u>Regents of the Univ. of Cal.</u>, 891 F.3d at 1155.

The Ninth Circuit recently found that a student's Title IX and Section 1983 claims were precluded because he failed to exhaust judicial remedies by seeking a writ of mandamus under Section 1094.5. In <u>Regents of the University of California</u>, the plaintiff filed a federal action, alleging claims under Title IX, Section 1983, and state law, arising out of his suspension from the University of California for sexual assault. 891 F.3d at 1150-51. In considering whether plaintiff's claims were barred from federal court, the Ninth Circuit explained that federal courts must give "preclusive effect to a state administrative decision if the California courts would do so." <u>Id.</u> at 1155. In California, a party must exhaust judicial remedies by filing a Section 1094.5 petition, "the exclusive and 'established process for judicial review' of an agency decision." <u>Id.</u> (citation omitted). Concluding that the decision to suspend plaintiff was "the sort of 'adjudicatory, quasi-judicial decision' that is subject to the judicial exhaustion requirement," the Ninth Circuit found that plaintiff's Section 1983 and Title IX claims were precluded because he failed to exhaust judicial remedies by filing a Section 1094.5 writ petition. <u>Id.</u>; <u>cf.</u> <u>Applebaum v. Bd. of Dirs. of Barton Mem'l Hosp.</u>, 104 Cal. App. 3d 648, 656 (1980) ("California courts have long recognized a common law right to fair procedure protecting individuals from arbitrary exclusion or expulsion from private organizations which control important economic interests.").

Plaintiff does not allege she sought a writ of administrative mandamus under Section 1094.5 or explain why she is exempt from the exhaustion requirement. Where, as here, administrative mandate lies, failure to exhaust administrative remedies bars a civil action challenging the Administrative Withdrawal decision. <u>See</u> <u>Regents of the Univ. of Cal.</u>, 891 F.3d at 1155; <u>Loera v. Cty. of Imperial</u>, 256 F. App'x 961, 963 (9th Cir. 2007) (plaintiff's failure to seek state judicial review of the administrative board's decision by administrative mandamus action precluded him from relitigating issues in his

Section 1983 and state law claims); <u>Cal. Inst. of Tech.</u>, 2019 WL 4238888, at *2 (explaining "California requires exhaustion of judicial remedies through the filing of a § 1094.5 petition" (citing <u>Regents of the Univ. of Cal.</u>, 891 F.3d at 1155)); <u>Shen v. Albany Unified Sch. Dist.</u>, 2018 WL 4053482, at *2 (N.D. Cal. Aug. 24, 2018) (failure to exhaust judicial remedies by filing a Section 1094.5 petition precluded Section 1983 claim regarding expulsion). Accordingly, Defendant's Motion to Dismiss should be granted on this basis.

### 2.   Title IX Claim (First Cause of Action)

Title IX prohibits educational institutions that receive federal funds from discriminating based on sex. <u>See</u> <u>Mansourian v. Bd. of Regents of the Univ. of Cal.</u>, 816 F. Supp. 2d 869, 916 (E.D. Cal. 2011) (citing 20 U.S.C. § 1681). Plaintiff claims Defendant violated Title IX by filing a "Wrongful Title IX Complaint" against her without complying with "the Title IX Federal Compliance Procedures," resulting in the Administrative Withdrawal. FAC at ¶¶ 47, 51, 53, 55.

The allegations of the FAC are insufficient to plausibly state a Title IX claim. First, Plaintiff has not provided sufficient factual support for her claim that Defendant filed a "sexual misconduct complaint" against her (FAC ¶ 51). It is unclear from the FAC whether Plaintiff is referring to Van Lant's initial complaint, the No Contact order, or a separate complaint.[2] In accordance with Fed. R. Civ. P. 8, the plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give defendant fair notice of what plaintiff's claim is and the grounds upon which it rests. <u>See</u> <u>Twombly</u>, 550 U.S. at 555 & n.3; <u>Brazil v. U.S. Dep't of the Navy</u>, 66 F.3d 193, 199 (9th Cir. 1995); <u>McKeever v. Block</u>, 932 F.2d 795, 798 (9th Cir. 1991). Plaintiff's vague First Cause of Action fails to comply with Rule 8.

---

[2] Her Opposition to the Motion to Dismiss appears to suggest that this was a separate complaint filed in November 2018. Opp. at 39.

Second, the FAC does not allege intentional sex discrimination. Plaintiff does not allege that the "Title IX Complaint" resulted from intentional discrimination, let alone identify any connection between this purported complaint and her sex. Nor has Plaintiff shown how she was treated differently than similarly situated students. See Esonwune v. Regents of the Univ. of Cal., 2017 WL 4025209, at *5-6 (N.D. Cal. Sept. 13, 2017) (conclusory allegations of discrimination insufficient to plausibly establish a Title IX claim).

Defendant also contends that this claim is barred by the applicable statute of limitations. MTD at 18. Although this claim may ultimately be barred, it is not clear from the face of the FAC. A court may dismiss a complaint based upon statute of limitations grounds if "the basis for the argument appears on the face of the complaint and any materials the court is permitted to take judicial notice of." Hernandez v. Sutter W. Capital, 2010 WL 3385046, at *2 (N.D. Cal. Aug. 26, 2010) (citing Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)). However, dismissal based on the statute of limitations is appropriate only if the complaint, read with the required liberality, and any properly judicially noticed documents, would not permit the plaintiff to show tolling. See Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993). Because Plaintiff has not sufficiently identified the "complaint" at issue, the Court cannot conclude, as a matter of law, that the First Cause of Action is barred by the statute of limitations.

### 3. Title VI Claim (Second Cause of Action)

Title VI of the Civil Rights Act of 1964 provides, in pertinent part, that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial aid." 42 U.S.C. § 2000d. To state a claim for damages under Title VI, a plaintiff must allege the defendant is: (1) engaging in racial discrimination;

1   and (2) is receiving federal financial assistance. <u>Davison ex rel. Sims v. Santa</u>

2   <u>Barbara High Sch. Dist.</u>, 48 F. Supp. 2d 1225, 1229 (C.D. Cal. 1998).

3       Plaintiff alleges Defendant violated Title VI by Jones, Shin, and Van

4   Lant "deliberately exclud[ing], den[ying], and discriminat[ng] against her as a

5   student." FAC ¶ 57. As to Jones, Plaintiff claims she was the only person of

6   her "racial/ethnic group" in his resurrection course in the Spring of 2017. She

7   asserts Jones gave her a "wrongful failing grade" "due to her racial ethnicity";

8   and denied her "the benefits of faculty conference advising time," the

9   opportunity to drop the course, and timely feedback on her assignment in an

10  effort to "undermine[] and purposely sabotage[]" her opportunity to be

11  successful in his course. She further claims that Jones presented KKK

12  PowerPoints during his lectures, which were "extremely offensive" to Plaintiff.

13  FAC ¶ 59. As to Shin, she alleges Shin engaged in "racist name calling

14  behavior" by calling her an "overachiever" during his Fall 2017 survey of the

15  new testament course and filing a complaint against her on November 2, 2017,

16  which she claims related to her expressing her views regarding a topic during

17  classroom discussion. <u>Id.</u> ¶ 60. Finally, Plaintiff claims that Van Lant's request

18  for a No Contact document was "racially motivated," and Van Lant further

19  discriminated against her by "electronically tracking, stalking, and racial

20  profiling surveillance" when she was on campus. <u>Id.</u> ¶ 61.[3]

21      Plaintiff does not allege any facts suggesting that she was discriminated

22  against on the basis of race, color, or national origin. Plaintiff's allegations are

23  conclusory and fail to provide any facts showing that Defendant discriminated

24  against her on the basis of her race or national origin. <u>See</u> <u>Thomas v. S.F.</u>

25  <u>Cmty. Coll. Dist.</u>, 708 F. App'x 398 (9th Cir. 2017); <u>Joseph v. Boise State</u>

26  _____

27      [3] To the extent Plaintiff also alleges that the Administrative Withdrawal
    proceedings violated Title VI, as explained above, Plaintiff has not exhausted her
28  judicial remedies with respect to claims regarding the Administrative Withdrawal.

Univ., 667 F. App'x 241 (9th Cir. 2016). Her personal belief without any supporting factual allegations that the professors' actions were racially motivated is insufficient to state a Title VI claim.

Second, Plaintiff primarily seeks to hold Defendant liable based on vicarious liability. However, in this context, an entity's liability is limited to the entity's own misconduct. See Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 640 (1999) (recipient of federal funds may be liable in damages under Title IX only for its own misconduct); Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277, 286, 290 (1998) (plaintiff may not recover damages in Title IX action against a school district for a teacher's sexual harassment of a student "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct," and noting that Title VI is parallel to Title IX and operates in the same manner); United States v. Cty. of Maricopa, 889 F.3d 648, 652 (9th Cir. 2018) (explaining the Supreme Court has "interpreted Title IX consistently with Title VI" and has held that an entity's liability as to Title VI is limited to the entity's own misconduct (citation omitted)). Thus, while an entity may not be held vicariously liable on a respondeat superior theory, it can be held liable under Title VI if an official with power to take corrective action is "deliberately indifferent to known acts" of discrimination. Cty. of Maricopa, 889 F.3d at 652 (quoting Davis, 526 U.S. at 641). An entity also may be held liable for acts of discrimination that result from its own official policy. Id.

Here, the FAC identifies no policy by Defendant that caused the harm about which Plaintiff complains. Nor has Plaintiff sufficiently alleged that an official with authority to address the alleged discrimination and institute corrective measures on Defendant's behalf had actual notice of the alleged discriminatory conduct and was deliberately indifferent to the discrimination.

1    <u>Gebser</u>, 524 U.S. at 290. The only arguable allegation of conduct by Defendant

2    was the issuance of the No Contact order; but the FAC does not plausibly

3    suggest Defendant acted with any discriminatory animus in issuing this order.

4    Moreover, Plaintiff's vague and conclusory allegations that she "believes"

5    Defendant put a tracking device on her vehicle for "the purpose of racial ethnic

6    profiling" and that she "presented factual evidence" of Defendant's violations

7    to the Provost and general counsel of the university (FAC at 22-24), without

8    any factual support, are insufficient to plausibly state a Title VI claim against

9    Defendant. As such, Plaintiff's VI claim fails for this additional reason.

10        Finally, the claim appears largely barred by the statute of limitations.

11   Title VI claims are governed by the same limitations period as those brought

12   under 42 U.S.C. § 1983. <u>Taylor v. Regents of the Univ. of Cal.</u>, 993 F.2d 710,

13   712 (9th Cir. 1993) (per curiam). In turn, that limitations period is set by the

14   forum state's limitations period for personal injury actions. <u>Pouncil v. Tilton</u>,

15   704 F.3d 568, 573 (9th Cir. 2012); <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991 (9th

16   Cir. 1999). In California, the limitations period for personal injury claims is

17   two years. Cal. Civ. Proc. Code § 335.1. Thus, the limitations period for

18   Plaintiff's Title VI claim is two years. Federal law determines when the claim

19   accrues. <u>Morales v. City of Los Angeles</u>, 214 F.3d 1151, 1154 (9th Cir. 2000).

20   "Under federal law, 'a claim accrues when the plaintiff knows or has reason to

21   know of the injury which is the basis of the action.'" <u>Knox v. Davis</u>, 260 F.3d

22   1009, 1013 (9th Cir. 2001) (quoting <u>TwoRivers</u>, 174 F.3d at 991).

23        Defendant argues "all of the speculation and conclusory allegations that

24   purport to support a Title VI claim occurred more than two years before this

25   action was filed and are therefore barred by the two-year statute of

26   limitations." MTD at 20. Plaintiff responds, without explanation, that her

27   claim is timely under the continuing violation doctrine, claiming her Title VI

28   claim accrued in November 2018. Opp. at 23-24. The Court disagrees.

Discrete discriminatory acts are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. Here, Plaintiff alleges that Jones discriminated against her during his Spring 2017 course; Shin used racist behavior during his Fall 2017 course and by filing a complaint against her on November 2, 2017; and Van Lant filed the No Contact document/complaint and allegedly tracked her whereabouts on campus. The allegations regarding Jones and Shin as well as the No Contact order involve discrete acts of discriminatory conduct. Plaintiff was aware of the underlying conduct involving Jones's and Shin's courses in Spring and Fall of 2017. As such, to the extent Plaintiff seeks to assert a Title VI claim based on Jones's and Shin's conduct during the Spring and Fall courses, such claims appear to be barred by the applicable limitations period. However, liberally construing the FAC, the Court cannot conclude that, as a matter of law, the remaining claims (Shin's complaint, the No Contact order, and surveillance) are barred by the statute of limitations. Any amended complaint shall only include claims timely asserted under the statute of limitations.

The Motion to Dismiss should be granted as to Plaintiff's Title VI claim.

### 4.    Constitutional Claims (Third Cause of Action)

Plaintiff also alleges that Defendant violated the First (Freedom of Religion and Freedom of Speech), Fourth (Right to Privacy), Ninth (Fundamental Rights), and Fourteenth (Equal Protection and Due Process) Amendments based on the allegations described above. FAC at 20, 39-41.

Section 1983 of Title 42 of the United States Code provides a cause of action for violations of constitutional or other federal rights committed by persons acting under color of state law. See Crowley v. Nev. ex rel. Nev. Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012). "[Section] 1983 is not itself a

source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Id. (alteration in original) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)). To state a claim, a plaintiff must allege a defendant, acting under color of state law, caused a deprivation of the plaintiff's federal rights. See West v. Atkins, 487 U.S. 42, 48 (1988). "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful . . . .'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)); see also Ouzts v. Md. Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974) (en banc) (purely private conduct, no matter how wrongful, is not covered under § 1983). There is no right to be free from the infliction of constitutional deprivations by private actors. Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); see also Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991) (as amended) ("[P]rivate parties are not generally acting under color of state law, and we have stated that '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'" (citation omitted)).

Private conduct is not generally considered governmental action unless "something more" is present. See Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999). Courts have applied certain tests to identify whether there is "something more," including the public function test, the joint action test, the governmental compulsion test, and the governmental nexus test. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982); see also Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003). "Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir. 1989).

Here, Defendant argues that it is not a state actor; it is a California non-profit religious corporation. As such, Plaintiff fails to allege the necessary state action to bring a constitutional claim against it. MTD at 21. Plaintiff does not dispute Defendant's contention in her Opposition.

The Court agrees with Defendant that Plaintiff has not shown state action in the present context. As currently pled, the allegations in the FAC are insufficient to support a plausible claim that Defendant acted under color of state law. The mere receipt of public funds does not mean that the conduct at issue was state action. Rendell-Baker v. Kohn, 457 U.S. 830, 840 (1982) (concluding that a private, non-profit school's receipt of public funds did not transform the discharge decisions into acts of the State); Nkwuo v. Golden Gate Univ., 2016 WL 706020, at *11 (N.D. Cal. Feb. 23, 2016) ("mere receipt of funds does not mean that the acts in question constitute state action").

Accordingly, Plaintiff has not sufficiently stated a Section 1983 claim.

> 5.      Wrongful Administrative Withdrawal (Fifth Cause of Action)

Plaintiff's Fifth Cause of Action is entitled, "Wrongful Administrative Withdrawal." However, as Defendant notes in its Motion to Dismiss, Plaintiff does not cite any legal authority in support of this claim and the claim relates to the same underlying conduct as the other claims. As such, this claim is duplicative and redundant, and therefore, subject to dismissal. See M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims.").

> 6.      State Law Breach of Contract/Negligence Claim (Fourth Cause of Action)

This Report does not address the merits of Plaintiff's non-federal claim. When a federal court has dismissed all claims over which it has original jurisdiction, it may, at its discretion, decline to exercise supplemental

jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639-40 (2009). Because Plaintiff's federal claims are subject to dismissal, Plaintiff's state law breach of contract/negligence claim also is subject to dismissal.

### 7.   Leave to Amend Should Be Granted

Upon finding that a complaint should be dismissed for failure to state a claim, a court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). If, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1087-88 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where an amendment would not cure the "basic flaw" in the pleading).

For the reasons set forth above, it is not apparent to the Court that the defects in Plaintiff's allegations can be cured by amendment. However, providing Plaintiff the benefit of every doubt, the Court recommends that the FAC be dismissed with leave to amend. Plaintiff is advised that if she elects to file a Second Amended Complaint and the allegations remain deficient, the Court is unlikely to grant or recommend further leave to amend.

### B.   Motion to Strike

In light of the Court's recommendation that the Motion to Dismiss be granted, Defendant's Motion to Strike should be denied as moot. However, in

the event Plaintiff files an amended complaint, as provided below, Plaintiff is reminded that a complaint with "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and "'naked assertion[s]' devoid of 'further factual enhancement'" does not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Iqbal, 556 U.S. at 678. Any amended complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) granting Defendant's Motion to Dismiss the FAC; (3) denying Defendant's Motion to Strike as moot; and (4) directing Plaintiff, if she still desires to pursue this action, to file a Second Amended Complaint within thirty (30) days of the date of the District Court's Order accepting this Report and Recommendation remedying the deficiencies discussed above.

If the District Court accepts this Report and Recommendation and Plaintiff chooses to file a Second Amended Complaint, it should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to any other pleading. By such leave, **Plaintiff shall not include new defendants or new allegations that are not related to her previously-asserted claims.**

Alternatively, if after review of this Report, Plaintiff should decide not to further pursue this action, Plaintiff may file a Notice of Dismissal pursuant to Federal Rule of Civil Procedure 41(a). The Clerk is directed to provide Plaintiff with a copy of a Notice of Dismissal.

1   Lastly, Plaintiff is cautioned that failure to timely file a compliant
2   Second Amended Complaint will result in a recommendation that this action
3   be dismissed for the above-stated reasons and for failure to prosecute and obey
4   a Court order pursuant to Federal Rule of Civil Procedure 41(b).

5
6   Dated: April 10, 2020 _____                    _____
7                                                    JOHN D. EARLY
                                                     United States Magistrate Judge
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28